**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Continental Resources, Inc., | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTION FOR TEMPORARY** |
| Plaintiff, | ) | **RESTRAINING ORDER** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:15-cv-19 |
| Art Langved, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Plaintiff's "Motion for Temporary Restraining Order" filed on February 13, 2015. See Docket No. 3. The Plaintiff, Continental Resources, Inc., seeks a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Specifically, the Plaintiff requests an order prohibiting the Defendant from interfering with the Plaintiff's oil and gas activities on certain real property the Defendant owns in Mountrail County, North Dakota. For the reasons set forth below, the Court grants the Plaintiff's motion for a temporary restraining order.

## I. BACKGROUND

The Plaintiff, Continental Resources, Inc., ("Continental"), is an Oklahoma corporation with its principal place of business located in Oklahoma City, Oklahoma. Continental is an oil and gas exploration company with operations in western North Dakota and elsewhere.

The Defendant, Art Langved, is a North Dakota resident and the surface estate owner of certain real property ("Subject Property") in Mountrail County, North Dakota, described as follows:

> Township 153 North, Range 93 West
> Section 15:    NE/4NE/4

Langved also owns an interest in the oil and gas underneath the Subject Property.

1

Continental alleges it owns a leasehold interest in the oil and gas in and under a two-section spacing unit described as Sections 15 and 22, Township 153 North, Range 93 West, Mountrail County, North Dakota ("Spacing Unit"). The lease covering all of Langved's interest in the oil and gas in and under the Spacing Unit was signed in 2004. See Docket No. 1-1. The lease was assigned to Continental in 2013. See Docket No. 1-2. Continental's leasehold interest in the Subject Property grants it the exclusive right to conduct drilling and production operations on the Subject Property and to use as much of the surface estate of the Subject Property as is reasonably necessary to exercise its leasehold rights. Those rights include the exclusive right to use the land for oil and gas exploration and production along with rights of way and easements for laying pipelines and related infrastructure. See Docket No. 1-1.

On or about July 17, 2014, Continental applied for and was granted permits from the North Dakota Industrial Commission ("Industrial Commission") to drill three wells on the Spacing Unit that includes the Subject Property. Thereafter, Continental drilled the three wells ("Margaurite Wells") from a surface location within the Subject Property. Continental is currently working on pipeline and electric utility infrastructure to service those wells. In addition, Continental has plans to drill six additional wells on or near the Subject Property.

Continental contends Langved has interfered with its leasehold. Langved sought to prevent Continental from drilling the Margaurite Wells and now seeks to prevent Continental from laying pipelines and developing other infrastructure that is necessary to produce and market oil and gas from the wells.

During the summer of 2014 when Continental was preparing to drill the Margaurite Wells, Langved and/or his agent, Tom Gray ("Gray") constructed or caused to be constructed a shack within five-hundred feet of the proposed surface location of the Margaurite Wells. Langved then

2

contacted the Industrial Commission on July 21, 2014, the same day Continental planned to begin drilling operations, demanding Continental's drilling operations be halted based on Continental's allegedly having violated the five hundred-foot setback requirement.

Langved's actions prompted the Industrial Commission to halt Continental's drilling activities temporarily as it evaluated Langved's claim. On July 22, 2014, the Industrial Commission informed Continental it could proceed with drilling its wells, concluding the shack was a mere ploy to delay drilling.

On July 23, 2014, Tom Gray, an individual who owns no interest in the property but has been acting as an agent of Langved, was acting erratically and at times aggressively toward Continental employees or contractors at the well site, including using strong language in an attempt to stop Continental's drilling operations. Gray's aggressive behavior nearly caused an accident involving a pickup truck pulling a forty-foot trailer on a highway near the well site. The pickup was moving at a speed of approximately 65 miles per hour when Gray pulled onto the highway immediately in front of the pickup, forcing the driver of the pickup to take evasive action to avoid Gray's vehicle. The driver was able to narrowly avoid Gray's vehicle. After the near accident, Gray drove a vehicle onto the section line right-of-way that provides access to the Margaurite Wells, blocking access to the well site. The vehicle remained in place for the remainder of the day on July 23.

In January 2015, Continental's contractor informed Langved that pipelines and electric utility infrastructure would be installed on the Subject Property to service the Margaurite Wells. Langved responded that such infrastructure would only be installed "over [his] dead body." See Docket No. 1, ¶ 19.

By letter dated January 19, 2015, Continental notified Langved, in accordance with Chapter 38-11.1 of the North Dakota Century Code, of Continental's intention to install pipelines and electric

utilities on the Subject Property and offered to compensate him for the damage. See Docket No. 1-3. After the 20-day statutory waiting period expired, Continental's contractors entered the property on or about February 9, 2015, and began work on installation of the pipelines and electric utility line.

On February 12, 2015, Langved appeared on the Subject Property and ordered Continental's contractor to leave. Specifically, Langved informed the workers and safety personnel on site that "I ought to go to my house and get my rifle and then you guys will leave." See Docket No. 5, ¶ 7. Langveld also struck a service vehicle and used loud and foul language to berate the contractor's employees for disturbing his property without permission. Feeling threatened, the contractor's employees left the area.

Continental filed a complaint in this Court on February 12, 2015. See Docket No. 1. The complaint makes claims for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Continental filed a motion for a temporary restraining order along with its complaint. See Docket No. 3. Continental seeks to restrain and enjoin Langved from interfering with Continental's oil and gas development activities on the Subject Property including its right to install pipelines, electric lines, and other infrastructure that is reasonably necessary to explore for, produce, and market oil and gas produced by those wells. until further order of the Court. While Continental anticipates it will be difficult to serve Langved, it has engaged a process server in an attempt to give notice to Langved of its intention to seek a temporary restraining order. See Docket No. 6.

## II.    STANDARD OF REVIEW

Continental seeks a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, which provides in relevant part as follows:

4

**(b) Temporary Restraining Order.**

**(1)** *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

**(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

**(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Continental seeks a temporary restraining order without first giving notice to the Defendant.

The United States Supreme Court has recognized that in some limited situations, a court may properly issue *ex parte* orders of brief duration and limited scope to preserve the status quo pending a hearing. Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974); Carroll v. Princess Anne, 393 U.S. 175, 180 (1968). The limited nature of *ex parte* remedies

> reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, cf. Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 180 . . . (1968), but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

Granny Goose Foods, 415 U.S. at 438-39 (emphasis in original).

Rule 65(b) directs the court to look to the specific facts shown by an affidavit to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In addition, it is well-established the court is required to consider the factors set forth in Dataphase Systems, Inc., v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981) in determining whether a temporary restraining order should be granted. The *Dataphase* factors include "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the

5

injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id.

### III.     LEGAL DISCUSSION

It is well-established that the movant has the burden of establishing the necessity of a temporary restraining order. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989). "No single factor is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)).

#### A.     PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's "likelihood of success on the merits," the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp., 815 F.2d at 503 (quoting Dataphase, 640 F.2d at 113). At this preliminary stage, the Court need not decide whether the party seeking the temporary restraining order will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty percent likelihood that he will prevail on the merits.'" Id. (quoting Dataphase, 640 F.2d at 113). The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of

success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Court must consider the substantive claims in determining whether Continental has a likelihood of success on the merits. Continental alleges causes of action against Langved for declaratory and injunctive relief. See Docket No. 1. A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" *Dataphase* factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Court finds Continental has a strong likelihood of success on both its claims against the Langved. Based on the limited record before the Court, it appears Continental has a clear legal right to develop the oil and gas underneath the Subject Property. The oil and gas lease by which Continental obtained its right to develop the oil and gas underneath the Subject Property was signed by Langved himself. Under North Dakota law, Continental has the right to move on and use so much of the surface estate as is reasonably necessary to lay oil, gas, and water pipelines and to furnish electricity to the Margaurite Wells. Langved, despite owning an interest in the surface of the Subject Lands, has no right to prevent Continental's use of the surface for the purpose of developing the oil and gas leasehold estate. It does not appear Langved has any valid legal basis for interfering with Continental's activities on the Subject Property.

As the Court has found a strong likelihood of success on Continental's claims, no further analysis is necessary at this point. See Nokota Horse Conservancy, 666 F. Supp. 2d at 1078-80 (finding sufficient likelihood of success on the merits of one claim, without a need to undertake extensive review of other claims). The Court finds Continental has shown the "success on the merits" *Dataphase* factor weighs strongly in favor of the issuance of a temporary restraining order.

### B. IRREPARABLE HARM

Continental must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007) (citing Northland Ins. Co. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000)). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E. D. Mo. 2004). The party that seeks a temporary restraining order must show that a significant risk of harm exists. Doe, 514 F. Supp. 2d at 1135 (citing Johnson, 351 F. Supp. 2d at 945). The absence of such a showing is sufficient grounds to deny injunctive relief. Id. (citing Gelco v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987)).

Continental contends it will suffer irreparable injury if Langved continues to interfere with their exploration activities. Langved seeks to prevent Continental from exercising the rights he expressly granted Continental pursuant to the oil and gas lease which Langveld himself signed. Langved has no legal basis for doing so. If Langved is allowed to prevent Continental from continuing its drilling operations on the Subject Property, even temporarily, Langved will wrongfully strip Continental of its contractual and statutory rights. The situation has escalated to the point where there have been threats of physical harm to Continental's contractors. Physical harm would be unlawful and clearly irreparable. See N.D.C.C. § 34-08-07 (permitting courts to restrain threatened or continued unlawful acts). The affidavits and supporting documents filed by Continental demonstrate the threat of irreparable harm is very real. See Docket Nos. 1, 5, and 6.

The Court finds the threat of Langved's continued interference with Continental's activities is real and poses a significant threat of irreparable harm. Further, the Eighth Circuit has explained that a district court can presume irreparable harm if the movant is likely to succeed on the merits.

8

Calvin Klein Cosmetics Corp., 815 F.2d at 505 (citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980)). As Continental has demonstrated the threat of irreparable harm, the Court finds this *Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

### C. BALANCE OF HARMS

As outlined above, Continental has demonstrated the threat of irreparable harm. The balance of harm factor requires consideration of the balance between the harm to the movant and the injury the injunction's issuance would inflict on other interested parties. Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994). While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harm factor analysis examines the harm to all parties to the dispute and other interested parties, including the public. Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991).

At this early stage, Continental has clearly demonstrated a strong likelihood of success on the merits and a real threat of irreparable harm. It does not appear the temporary restraining order Continental seeks will harm the Langved in any way. Langved has an interest in the Subject Property and a right to be compensated for the oil and gas development activities. See N.D.C.C. ch. 38-11.1. Granting a temporary restraining order will not impact Langved's right to compensation. The issuance of a temporary restraining order will merely prevent Langved from further delaying Continental's activities, and will prevent Langved from taking action against Continental's employees that enter the Subject Property. It is important to remember that Langved freely entered into the oil and gas lease by which Continental the right to develop the minerals.

If the *ex parte* temporary restraining order is not granted, Continental will be forced to either

9

abandon its planned operations on the Subject Property or continue it activities under threat of physical violence against its employees and contractors and potential corresponding liability for Continental. Under either of these scenarios, Continental will be irreparably harmed.

The balance of harms clearly favors Continental. Given the relatively short time period and the potential for Continental to suffer lengthy and costly delays resulting in significant harm, the Court finds the "balance of harm" *Dataphase* factor weighs in favor of issuance of an *ex parte* temporary restraining order.

### D.  **PUBLIC INTEREST**

The final *Dataphase* factor, which involves consideration of public policy, also favors the issuance of a temporary restraining order. The North Dakota legislature has specifically declared that the development and production of oil and gas is in the public interest. N.D.C.C. § 38-08-01 (stating it is "in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state"). The legislature has also found the rights of surface estate owners "should be justly compensated" for the use of their property occasioned by oil and gas development. See N.D.C.C. § 38-11.1-01.

Granting a temporary restraining order comports with both of these public interests. Public policy, as clearly stated in North Dakota law, favors the development of oil and gas resources. In furtherance of this policy, North Dakota law provides the mineral estate is dominant and the surface estate servient. Hunt Oil Co. v. Kerbaugh, 283 N.W.2d 131, 135 (N.D. 1979). While public policy favors compensation for owners of the surface estate, it does not permit surface estate owners to interfere with the development of the mineral estate. Continental has offered to compensate Langved for any damage caused to the Subject Property by its activities. In this way, oil and gas

10

is developed, and the rights of the surface owner are protected. In addition, it is certainly in the public interest to protect companies and their employees from physical harm while engaged in lawful business activities and to prevent unlawful conduct. Therefore, at this preliminary stage, the Court finds this *Dataphase* factor weighs in favor of the issuance of a temporary restraining order.

After a careful review of the entire record and the *Dataphase* factors, the Court finds Continental has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order.

## IV.  CONCLUSION

The Court has carefully reviewed the entire record and the *Dataphase* factors and finds the Plaintiff has met its burden under Rule 65(b) of establishing the necessity of an *ex parte* temporary restraining order. The Court **GRANTS** the motion for a temporary restraining order (Docket No. 3). As a result, the Defendant and any person or entities acting in concert with or on behalf of the Defendant, is **TEMPORARILY RESTRAINED AND ENJOINED** from interfering in any way with the Plaintiff and its contractors' access to and use of, the following real property, located in Mountrail County, North Dakota, for geophysical operations:

> Township 153 North, Range 93 West
> Section 15:    NE/4NE/4

In addition, the Court **ORDERS** the following:

1) A hearing will be held in Courtroom One of the U.S. District Court for the District of North Dakota, in Bismarck, North Dakota, on **Wednesday, March 4, 2015, at 1:00 p.m.** to determine whether a preliminary injunction should be issued.

2) At the hearing, the Plaintiff shall be prepared to show cause why a preliminary injunction should be issued. If the Plaintiff fails to do so, "the

court must dissolve the [restraining] order." Fed.R.Civ.P. 65(b)(3).

3) At the hearing, the Defendant shall be prepared to show cause why he should not be preliminarily enjoined during the pendency of this action.

4) At any time, the Defendant may file a motion to dissolve or modify this temporary restraining order in accordance with Rule 65(b)(4) of the Federal Rules of Civil Procedure. The Defendant may also contact the U.S. District Court to modify the time or date of the scheduled hearing.

5) The temporary restraining order will not become effective until the Plaintiff serves the order on the Defendant. The Plaintiff shall arrange for the immediate service of this order together with the Plaintiff's motion for a temporary restraining order (Docket No. 3), memorandum in support (Docket No. 4) and the supporting pleadings and affidavits (Docket Nos. 5 and 6), and shall promptly file proof of service with the Court.

6) No bond shall be required to be posted by the Plaintiff before the temporary restraining order is effective.

7) In accordance with Rules 65(b)(2), this order expires in 14 days or on or before March 4, 2015, at the same hour of this Order, unless the Court, for good cause, extends the order "for a like period or the adverse party consents to a longer extension."

**IT IS SO ORDERED**.

Dated at 11:00 a.m., this 18th day of February, 2015.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court